Good morning, Your Honor. May it please the Court, Alan Christensen for the defendants and appellants, Jackson and Harrington. I would request to reserve five minutes for rebuttal. I want to try and keep it simple. This matter involves the execution of a search warrant for Appelli's residence. The search warrant was for the vehicles and the residents and authorizes search for controlled substances, paraphernalia, firearms and weapons. And based on that warrant, on December 13 the deputies arrived at Appelli's residence, including the appellants. Deputies called Appelli out of the residence as he exited. He had an object in his hand. He was instructed to drop the object, which he did, and walk back to deputies where he was handcuffed and detained in the back of a patrol vehicle by deputies other than the two appellants. While he was detained, other occupants were called out of the house and the search was conducted. After the search, the appellant was released. Christensen, how much time would you say or does the record indicate elapsed between the time that he was brought out of the house to the time that he was handcuffed? It was a brief period of time, Your Honor, but I don't know that the record reflects the exact time. Would it have been the amount of time it would take a person to walk those, whatever that was, 30 feet? Yes, there was no delay other than for him to set his phone down, which was the object in his hand. And the firearms were trained on him until he was handcuffed and not after his handcuffing? That's correct, and actually the record doesn't reflect that firearms continued to be pointed at him after he dropped his cell phone. There's nothing in the record to indicate that firearms continued to be pointed at him after his cell phone was dropped. And how long was he in handcuffs in the back of the squad car, would you say? Was it for the duration, the entire duration of the search or longer or shorter? It was no longer than it needed for the search to be completed. I believe plaintiff indicates he was in the back of the patrol vehicle for a total of an hour and five minutes. And we used that time in our briefs. Mr. Christensen, would you agree that at the time your client dropped the cell phone, that officer still had not yet determined if he possessed a firearm somewhere on his person? That's not my client, Your Honor, but yes, I would agree that at the time the cell phone was dropped, he had not yet been searched. Yes, he had not yet been searched and it had not been determined whether or not there was anything else on his person. What kind of danger, if any, would someone pose if they were secured in the back of a patrol car, such that you would need to have restraints on them? Well, there's a few issues and that would be, and I think that was pointed out in MENA, as one of the substantial justifications for detention and that's preventing flight in the event that incriminating evidence is found and minimizing the risk of harm to officers and facilitating the orderly completion of the search. As far as what danger he has in the back of a patrol vehicle, I don't know that the record reflects this, but my understanding is that the door was open on the patrol vehicle. He was just being watched by other deputies. And as I understand it, there were no drugs found at the home from the search, is that correct? There were no drugs found, no. Or weapons? No. No, but of course that determination couldn't be made until after the deputies had actually conducted the search. I believe there were claims earlier about the propriety of the warrant, but were those allegations dropped or dismissed? What happened to those allegations? They were dismissed voluntarily, the allegations that there was judicial deception for the warrant. Initially they were adjudicated in favor of Jackson and his summary judgment and then later dismissed by appellees. Do you have any other points for us? I do. Now, going to the second issue, which is the detention in handcuffs, actually the issue is that the lower court found was whether not removing the handcuffs at some point during the ongoing search would be constituted as a violation of the law. And the appellants were not the deputies that placed the handcuffs on the appellee. The courts said that there was a tribal issue as to whether they were participants in the handcuffing itself. And we assume that for purposes of qualified immunity, but the lower court didn't find the handcuffing itself to be unreasonable. What the court said was that it could be a constitutional violation, could be unreasonable for leaving the handcuffs on for the duration of the search. But I could find no clearly established precedent that either of these appellants, neither of which who applied the handcuffs and for which there's no evidence that they were even near the appellee during the search, have any obligation to stop what they're doing during a lawful search to make a determination as to whether the handcuffs should be removed or that not doing so would amount to a constitutional violation. I don't think there is. In addition to the fact, I think that leaving the handcuffs on, I don't think that amounted to a constitutional violation. The search warrant was for drugs and firearms. We discussed that. There was no evidence that the handcuffs were too tight, that they caused injuries, that there was any complaints to any of the deputies that the handcuffs were causing a problem. There's no evidence that they were incorrectly applied. And there's no evidence that he was detained any longer than it took to complete the search of the house. In fact, all the testimony and the evidence is that he was released from the handcuffs immediately after the deputies came out of the house and determined there was no danger and no drugs found. So Mr. Christensen, is it your assertion that the defendants acted in conformity with their training during this incident? Yes, they did. And so under these circumstances, I think that not only does this continuing safety interest in detaining him in cuffs outweigh the marginal intrusion, because that's what it is. It's a marginal intrusion under Mueller v. Mena. But the length was reasonable. And as I said, there's no clearly established precedent that these appellants would have known that them not interrupting the search, them who either did not have control of plaintiff at the time, didn't apply the handcuffs, that not releasing him themselves wouldn't be a constitutional violation. Understood. Let me see if my colleagues have any other questions. Okay, then let's hear from opposing counsel. Thank you. Good morning, and may it please the court, Joseph Bolander for the appellee, Edward Liu. Unless the court wants me to start in a specific place, I'll address some of counsel's arguments, beginning with the excessive force issue, the gun pointing issue. So Robinson is the case that the district court most clearly relied on in this case to find that not only that there was a constitutional violation, assuming plaintiff's facts to be true, as we must at this stage, but in addition to that, that the law is clearly established that officers pointing firearms at a compliant, unarmed citizen who poses no threat to them. But counsel, weren't the circumstances here a little different? Circumstances were that they were there pursuant to a search warrant, correct? Correct. And that search warrant alleged allegations of drugs being involved, marijuana grow, correct? That is correct. That's what the search warrant alleged. And it also alleged that there may be firearms around during the course of the search. I believe that's what the search warrant also indicated, correct? Well, yes and no, and I'll qualify it this way. The search warrant did authorize for the search of firearms. That is accurate. Well, but that was based upon the affidavit, right? But there was zero specific evidence relating to Edward Liu or any occupant of the residence suggesting that there were firearms. But the affidavit included information about the possibility of having firearms located there, correct? I believe so, and it was just in the context of— And that's what the officers knew at the time, correct? Because presumably they read the search warrant. Well, I think that's an important issue, and our position is no, that's not what they knew at the time. Because there are facts in the record with respect to Harrington and Jackson who basically— Jackson drafted the warrant, and the information with respect to the warrant came from Harrington that, frankly, they falsified information that was inputted into the warrant process. So our position is that a deputy, an officer, cannot fabricate information— again, assuming the facts in the light and what's favorable to the plaintiff—in furtherance of obtaining a warrant and then use that information that they know to be false to explain some heightened level of fear that would justify pointing a firearm at an occupant. Counsel, as I understand it, the validity of the warrant is not at issue before us, is that correct? That is correct. So it's almost as if you're doing an end run around it. I understand this is an unfortunate incident. I sympathize with Mr. Lew about that. But if the warrant itself indicated that there might be probable cause to find both narcotics and weapons and the police have a reasonable expectation of being able to protect themselves because of that possibility, that, to me, also seems very distinct from Robinson, which did not involve the execution of a felony search warrant with those facts. So I guess that, to me, the most difficult case you would have to overcome is the Supreme Court's decision in Rattel, where just the mere possibility that there might be weapons at a house was conclusive in allowing the officers to point weapons at the residents who happened to be different people than who the search warrant was intended for. So I'm not sure how you get around Rattel in this case. And I'm sorry, let me have a little snippet here on Rattel. Sure. I have to refresh myself. But I do think, so there's a couple points there. And briefly on the false statements in the search warrant. And I agree. The court dismissed the judicial deception claim or adjudicated it against plaintiffs and then procedurally was just dismissed down the line. But what the court found left, effectively, that validated the warrant as to probable cause, was Harrington claiming he smelled marijuana related to the van and the windows to the garage being obscured. But can you address my Rattel point and the fact that the warrant does actually mention weapons as well? Yes. Isn't that conclusive? Why isn't that conclusive? A couple reasons why Rattel, I think, is factually distinct. Okay. Number one, in Rattel, you're talking about a, I believe it's a SWAT team or they're serving a warrant. But I think it's different when you're breaching the door and you're performing a protective sweep of the house. It's a very different scenario than setting up in positions of cover, 10 deputies outside, calling on a bullhorn, come out. The occupant, Mr. Liu in this case, comes out, cooperative, calm, follows all commands, hands up, walks directly towards them as instructed. They remain with their guns trained on them. And I would dispute that point. There is evidence in the record that guns stayed trained on Liu until he was handcuffed. So I think that is a different scenario than the breach of a door. Or I can't remember if this is a case where they got him with a key. But either way, there was not an answer. Deputies go in. They don't know what they're confronting. Room to room searching a house. Leave their firearms trained on individuals as long as until they determine they're not a threat and move on. It's a different scenario than a controlled situation that we had here. I think also in Rattel, and this goes to Your Honor's comment about, you know, a threat that there are weapons. There were weapons authorized to be searched for in the warrant. In Rattel, they had specific information related to either the occupants or one of the subjects that they either had a firearm or were known to, you know, I believe it was a gun registered to an occupant, which is a very different scenario here. And just to sort of step back factually, another thing that I think undercuts this notion that there's this heightened risk any time you're is that one thing that's not in the warrant, again, is any specific information related to Lew. If they had perceived some enhanced threat relating to the nature of the crime, which is what Robinson talks about, and I'll get there in a second, but why not run and see if there are guns registered to Lew? See if Lew has a criminal background. Would you agree, Counsel, that in a situation like that, things are very fluid? That officers, they have a warrant. They have the lawful authority to search the home. They're clearly occupants in the home. Are you arguing that it was objectively unreasonable for them to treat Mr. Lew as if he was still a danger to the officers at the time? I do. I am arguing that. But let me ask you this then. Yes. You agree with me at least that at the time of this incident, the officers had not yet conducted, let's say, a pat-down to satisfy themselves that Mr. Lew was not armed. Do you agree with that? Until Mr. Lew basically had been brought out of the house and handcuffed, yes. Okay. Right. Yes. So what part of that chain of events, that sequence of events, do you believe was objectively unreasonable? There's a couple of moments, I think, phases of this. So first, the announcement is made over the bullhorn for Lew to come out. He comes out. He is standing there. He does have something in his hand. Harrington, or not Harrington, I'm sorry, whatever deputy is communicating to him, says, drop the object in your hand. He does. Calmly, cooperatively, hands up. His hands are up. Come towards us. He's coming towards them. At this whole time, a gun, guns are trained on him. We're talking about 10 to 12 deputies as well. This is not a situation like many of the cases where the officers are barely outnumbering the suspects or regardless. So you have this scenario. And the notion that maybe this phone could have been confused for a weapon, in all of those cases, you have two things. You have a scenario where, number one, the officer says, I believe what he had was a weapon or could have been a weapon. Harrington does not say that here. It is not in his declaration. And secondly, you have the court finding that it was reasonable under those circumstances to confuse that particular object for a weapon. And that's not present in the case. And I think you would have to argue that the court impliedly found to the contrary. Because the court found Mr. Liu presented no threat to the officer. But, again, isn't this case different, though, because of those circumstances that we've talked about involving drugs and involving guns? I mean, I take your point that someone is walking down the street and for whatever reason officers are going to contact them. They drop whatever thing they have, raise their hands, and they have nothing else. I mean, I think that's a different situation. Your facts would be more favorable in that situation. Here is the context is important, don't you think? I do think the context is always important. I would agree with that. I don't think the idea that just because we're dealing with a search warrant necessarily factors in in some dispositive way. Well, a search warrant for drugs and guns, counsel. Well, the search warrant, again, zero specific information as to guns. But I don't know that that matters. The line of cases after Michigan v. Summers, the Supreme Court is talking almost about a categorical reasonableness standard there. And the import of those cases is about being able to conduct a search warrant in order to secure property, prevent flight, the safety of the officers. And what you're talking about here is, as Judge Jackson pointed out, is pointing a weapon until they detain someone and could put them in handcuffs and secure the situation. And I'm just not sure. I haven't heard you mention any case that pursuant to a search warrant that officers can't point a weapon at someone until they detain him and make the situation safe, that that is objectively unreasonable. I think my – so, again, to sort of – I think to bear back to Robinson. Robinson talks about the nature of the crime being investigated as a potential factor that courts consider in determining the reasonableness of pointing a firearm at an individual. And in Robinson, you know, I would argue first that I think the facts confronting the officers in Robinson were more potentially dangerous than the controlled, you know, rate of a potential marijuana grow in this case. But regardless, when you're looking at the nature of the crime, I think the district court rightly did not confine herself to simply felony misdemeanor in that sense. And what I mean by that is, right, you look at sort of the underlying – and we go through some crimes in the brief, you know, perjury. For instance, Meredith, it goes for more the detention issue, but tax crimes, right, felony tax crimes. Would it be authorized to then point a gun at the individual coming out of the house? And what I would say, again, is a case that I think is helpful is Thompson v. Rahr. In Thompson, it was a traffic stop, which is a slightly different situation. But in that case, the agents or the officers were investigating a potential felony gun crime. And they took the individual out of the car. The individual was sort of sitting there waiting for the situation to unfold. And guns remained trained on the individual. And this court found that there was a constitutional violation in that interaction. And, again, in that case, you're dealing with a felony, which is alleged here, which I still contest. You know, I have issues with that. But beyond that, you're dealing with guns. And, again, the court said, well, just because you're dealing with guns and just because you're dealing with a felony, it doesn't mean it's not a constitutional violation. But in Thompson, at least the officers at least conducted a pat-down and satisfied themselves that the arrestee was not in possession of a firearm at the time the weapons were trained on him. Is that right? I believe that's right. But I would argue that in this case, Lew is undisputedly hands-free for the majority of the interaction while the guns are trained on him. Hands up, walking out of the house, 10 to 12 deputies pointing their guns at him. I mean, I guess you could say any – But the officers don't know he's got a gun, counsel. Right? Officers don't know he's got a gun. Well, they do know if he's – you know, if he's doing this – On him? On him. On him, they don't know. They don't know that. They haven't patted him down. I would say that that is an inherent risk of any interaction that a police officer has. Somebody could always be armed. Somebody could always have a gun in their waistband. I mean, I do think, too – But then when you couple that with a search warrant where there might be probable cause that a weapon is in the house is what I think makes it very difficult for your case. And my last point – and I'm sorry, I know I'm running out of time on Robinson, and I wish I could have talked more about the detention aspect. I would just ask the court to look at Meredith and some of those cases as I know you have. But I would say that is, again, where we have to come back to the objective facts, just looking from a ground perspective. What did the officers know at the time? So if you – you know, it's in a sense no different than receiving a dispatch, that the suspect is five foot one, right? And you have to incorporate that into the reasonableness of your conduct. My point here being the deputies at the scene here knew much of the information in the warrant was falsified. So I would expect a reasonable officer, knowing that, to conduct themselves with a little more reserve than was conducted here. And especially – and I'm sorry, on the detention issue, it goes to that as well. Because – so one-hour detention in handcuffs. Wait, there was no finding that the information was falsified, correct? There was. That's an assertion, but there's been no – there was certainly no finding by a judge, a magistrate judge. There are facts that the court considered that Lou presented in connection with, you know, all of the underlying claims that suggest as much. And the court – what the court – extracted those facts from the – for the purpose of evaluating the judicial deception claim, right, because you look at the – Right, correct. But the court also denied defendants' objections with respect to claiming that those facts of falsification in the warrant were irrelevant in regards to the existing claims. And I'll close with just that point, which is – and I think that's an important point. Because, again, if they know much of the basis for why they're there is false, based on their own falsities, they open the door. There's no indication of any smell of marijuana. When – that wasn't one of the big reasons they were supposed to be there. I do think they have an obligation to look out and say, hey, maybe take this guy out of cuffs, right? This is not looking anything like what we claimed it was. Okay. So thank you. Turning it back to you, Mr. Christensen. Thank you. Just – I want to be as brief as I can. I don't have a whole lot of time. Your Honor is correct. There is no finding that the information in the search warrant was falsified. That's just not the case here. As far as Robinson, I would agree that Robinson doesn't apply here. Robinson – in fact, the holding in Robinson was that pointing a gun to the head of an apparently unarmed suspect during an investigation could be a violation of the Fourth Amendment. That's not what we have here. There is no evidence. In fact, the evidence is contrary that the guns were close to the face of or pointed at the head of a pelee. In Robinson, there was no search warrant, as you've already pointed out. In Robinson, he wasn't called out to the deputies from inside of a home. He was already outside, and he walked up to the deputies on his own accord in an unbuttoned shirt and empty-handed. And they knew that earlier he had a shotgun. Obviously, it's difficult to hide a shotgun in that circumstance. And also, in Robinson, they were investigating. They were investigating a misdemeanor. They weren't there executing a search warrant for potential felonies. So the cases are not similar. I think that – and further, I already pointed this out, but there is no evidence that the firearms continued to be pointed at a pelee once he dropped the object in his hand, which turned out to be a cell phone. So the pelee didn't exit the residence empty-handed. He may have had his hands up, but he did have something in him. He had a cell phone. It was an object in his hand. They asked him to set it down. He set it down. And there is no evidence that once that occurred that the guns continued to be pointed at him. As far as the handcuffing, you know, counsel cites to Meredith. Meredith was quite different as well. There was excessive force in applying the handcuffs. It was, I believe, a tax warrant. The handcuffs were applied overly tight. They left that way for 30 minutes before they were loosened. That didn't occur here. There was no excessive force used in applying the handcuffs. The handcuffs were not overly tight. There was no injury. There was no complaint about injury. The length of time he was in handcuffs is alleged to be an hour or an hour and five minutes, which we agree with for purposes of this qualified immunity argument. But they weren't on any longer than it took to conduct the search. There's no evidence that the deputies, as soon as they entered the house, they found that there was nothing to search for. Of course they have to search the house. In this case, there were other occupants in the house. Although two of the occupants came out that turned out to be his teenage children, there's no evidence that until they've entered the house, they know whether or not there are other occupants in the house, other dangers or the drugs they're looking for or firearms. I think it was still reasonable to keep him detained in handcuffs. It's a marginal intrusion. We've addressed the Mueller versus Mana factors for justification. I think in cases where there's an inherent danger— I think we're getting the gist of your arguments. Is there anything you want to finish up with? Just what I've already addressed, Your Honor, and that is that this is a qualified immunity case. There's no clearly established law that would have put either of these appellants on notice that what they were doing would have been unlawful or unconstitutional. There's no clearly established law that they had any obligation to stop what they were doing during the search and come out and say, hey, go ahead and take those handcuffs off, when they weren't the deputies that put them on or the deputies that were near the plane while he was being detained. With that, I'd rest, Your Honor. Great. Thank you very much. The matter will stand submitted, and we will move on to our next case.
judges: SANCHEZ, MENDOZA, Jackson